UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Eastern Division                                        Case No. _____

|  |  |
|---|---|
| JACQUELINE BULLIO, | ) |
|     Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| WYNN MA, LLC d/b/a ENCORE BOSTON | ) |
| HARBOR AND WYNN RESORTS, LTD., | ) |
|     Defendants. | ) |

# Complaint and Demand for Jury Trial

## INTRODUCTION

Plaintiff Jacqueline Bullio ("Plaintiff" or "Ms. Bullio") brings claims for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Mass. Gen. L. c. 151B § 4(1) and claims under the federal Equal Pay Act, 29 U.S.C. § 206(d) and the Massachusetts Equal Pay Act, Mass. Gen. L. c. 149 § 105A. Ms. Bullio's claims arise out of acts of her former employers, Defendants Wynn MA, LLC d/b/a Encore Boston Harbor and Wynn Resorts, Limited, when she was terminated because of her sex (female) and by not paying her what they paid other male Executive Chefs.

## PARTIES

1.    Plaintiff Jacqueline Bullio is an adult resident of the Commonwealth of Massachusetts, who resides at 210 Trotter Road, Apt. 207, Weymouth, Norfolk County, MA 02190.

2.    Defendant Wynn MA, LLC d/b/a Encore Boston Harbor ("Encore") is a resort property that includes a casino, several restaurants, a hotel and retail establishments with a

principal place of business located at One Broadway, Everett, Middlesex County, MA 02149. The address for Wynn MA, LLC as listed with the Massachusetts Secretary of State is 3131 Las Vagas Blvd., South, Las Vegas, Nevada 89109.

3.    Defendant Wynn Resorts, Limited is a parent company of Wynn MA, LLC[1] with its headquarters in Las Vegas at 3131 Las Vagas Blvd., South, Las Vegas, Nevada 89109. CT Corporation System, 155 Federal Street, Suite 700, Boston, Suffolk County, MA 02110 is listed as the registered agent with the Massachusetts Secretary of State for Wynn Resorts, Limited.

## JURISDICTION

4.    Plaintiff timely filed her claims with the MCAD and the Equal Employment Opportunity Commission ("EEOC").  Plaintiff removed her claims from the MCAD and received a right to sue letter from the EEOC, on February 14, 2024, to file her claims in Federal Court.

5.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 based on a federal question over the claims raised under 42 U.S.C. § 2000e et seq. and under 29 U.S.C. § 206(d). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) based on diversity of citizenship.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims raised under Mass. Gen. L. c. 151B and under Mass. Gen. L. c. 149 § 105A.

## FACTUAL ALLEGATIONS

6.    Ms. Bullio is the Plaintiff in this case, and she is a woman.

---

[1] In the Position Statement (at p. 1, n. 1) that Defendants filed at the Massachusetts Commission Against Discrimination ("MCAD") on October 21, 2021, Defendants made this representation: "Wynn Resorts, Limited is the sole owner of Wynn Resorts Holdings, LLC, which is the sole owner of Wynn Resorts Finance, LLC, which is the sole owner of Wynn America Group, LLC, which is the sole owner of Wynn MA, LLC."

7.  Ms. Bullio earned a Bachelor of Science in Culinary Arts from Johnson & Wales University in 2008. Since 2005, she has held many positions as a chef, as a private chef, station chef, a sous chef, a chef tournant, and an executive chef in restaurants and on private yachts. She worked as a sous chef for four years, from May 2015 to March 2019. As a sous chef, she served as the top assistant to the head chef. Prior to that she had 10 years of experience as a chef de partie, which is a station chef or line cook in charge of a particular area of production in a restaurant.

8.  In April 2019, Ms. Bullio interviewed for a position as a chef at Encore. Encore is a casino that is owned by Wynn Resorts, Limited, which owns and operates casinos all over the world including in Las Vegas where it is headquartered. Ms. Bullio was interviewed by the Executive Chef Joseph Leibowitz ("Chef Joe") who was the Corporate (or Property) Executive Chef at the casino, overseeing the back of the house operations for all the restaurants. During the interview, Chef Joe used the "F" word multiple times and even said to Ms. Bullio, "I can't believe I just swore in an interview. I'm from New York. They just fall out of my mouth." In the interview Chef Joe told Ms. Bullio they needed more women at Encore as "there is too much testosterone in here."

9.  Chef Joe hired Ms. Bullio to be a Chef Tournant. She started on April 8, 2019. She received a salary of $85,000 with a 10% bonus. The Chef Tournant is an executive-level chef. At the time she was hired there was only 1 other female executive-level chef, the Executive Pastry Chef-Restaurants.

10. A Chef Tournant is a floating chef, who helps wherever needed. Chef Joe assigned Ms. Bullio the task of trailing other Executive Chefs so that she would grasp the operation they were managing. Ms. Bullio helped the Executive Chef at Red 8 Restaurant for a few

days.  As Chef Tournant, Ms. Bullio essentially worked as a traveling Executive Chef
who filled in for Executive Chefs at the various different restaurant outlets when they
were out sick or on vacation or needed extra help.

11.     At the time Ms. Bullio was hired, Encore had not yet opened to the public. It was still
engaged in mass hiring of cooks and restaurant staff.

12.     One day in early May 2019, Ms. Bullio heard Chef Joe in the Food and Beverage Office
slam the phone on his desk and start swearing, "Fuck! Fuck! Fuck!"  He yelled for Chef
Russell Parker (his top assistant) and for Ms. Bullio to get in his office (the Food &
Beverage Office). He told them that the Executive Chef of one of the restaurants, On
Deck Burger Bar ("On Deck"), had quit.  He needed Ms. Bullio as Chef Tournant to start
filling in and start testing recipes for tasting. On Deck was a gourmet burger restaurant
and sports bar. Chef Russell explained to Ms. Bullio that she would need to create recipes
and source ingredients for such things as steak and cheese tots, different burgers, sliders,
chili, and all of the specialty shakes that would be expected in a ballpark themed sports
bar. Ms. Bullio immediately got busy sourcing ingredients and testing recipes.

13.     Chef Joe asked Ms. Bullio to review resumes of Executive Chef candidates.  When none
of the Executive Chef candidates worked out, Chef Joe offered Ms. Bullio the position of
Executive Chef for On Deck.

14.     Ms. Bullio was promoted to Executive Chef on May 20, 2019. When she was promoted,
she received a $5,000 raise to a salary of $90,000.  At the time, Ms. Bullio was 1 of only
2 female Executive Chefs at Encore and there were at least 10 male Executive Chefs.

15.     At the time Chef Joe promoted Ms. Bullio, he referred to her as "kiddo" in front of some
of her line cooks.  This comment was sexist and demeaning, especially in front of people

4

she was now officially supervising. Ms. Bullio never heard Chef Joe speak to male Executive Chefs in a sexist and demeaning manner like that.

16.     In a chef's meeting in May 2019, Chef Joe told the chefs that everyone had to start working 7 days a week to get ready for opening in a month.

17.     In her first few months on the job, Ms. Bullio heard Chef Joe swear regularly.  The "F" word was one of his favorite words.  Here are examples of texts messages from Chef Joe (cell: (xxx) xxx-4033) to his chefs, including Ms. Bullio, from June 2019 in which he swears, including using the "F" word:

- 6/5/19: "Jesus Christ take me out of this. I'm in a meeting with Mr. Maddox. Fucking phone keeps vibrating."

- 6/17/19: "Fucking remove me"

- 6/23/19: "Celery. Really? Opening day and we don't have fucking celery"

- 6/29/19: "Refucking move please"

Many of the Executive Chefs also used swear language. Ms. Bullio has multiple text messages where Executive Chefs are swearing at each other on text messages saying, for example, "Fuck you john," and "Fuck off eddie," and "you ugly Fuck," and "shit," and one chef calling Chef James Ash an "Ashhole."

18.     Sometime early on, one of Ms. Bullio's line cooks, Nelson Torres, told her he was afraid of Chef Joe.  Ms. Bullio told this to Chef Joe, who replied, "Good. Everyone should be afraid of me."

19.     To get ready to open, in addition to tasting recipes and setting up an inspirational ballpark themed menu, Ms. Bullio had to staff up and train her sous chefs and line cooks, make sure they were all fitted for uniforms, set up computer systems for the outlet, manage,

train and educate the staff on policies, procedures and menu development, make sure her staff all took the Food State Safety test, form relationships with local vendors to source high quality ingredients, and conduct food tastings with sous chef applicants. Ms. Bullio also assisted the Executive Chef of Sinatra restaurant create a video clip on making homemade pasta, brought equipment into the outlet, and assisted in any other tasks that were handed to her.

20.    Encore officially opened its doors to the public on June 23, 2019.

21.    During the summer of 2019, a consultant, Grant MacPherson, came to Encore to help with getting the restaurants up and running. He was the Property Opening Executive Chef for the Bellagio and Wynn Las Vegas and knew how Wynn restaurants operated. Mr. MacPherson was very helpful to Ms. Bullio in ordering new tables, working on menu items, and explaining the Wynn way.

22.    Chef Joe started to refer to Mr. MacPherson as Ms. Bullio's boyfriend, and said to her, "you two are in love." On occasion he referred to Mr. MacPherson as Ms. Bullio's boyfriend in front of other people, including managers. Ms. Bullio found Chef Joe's comments sexist and demeaning. Ms. Bullio never heard Chef Joe speak to male Executive Chefs in a sexist and demeaning manner like that.

23.    On Deck was one of the busiest restaurants at the casino, operating 7 days a week, from lunchtime through late night hours, with a seating capacity of 154 and projected daily covers of 511 people served.  Ms. Bullio supervised 2 sous chefs and 17 line cooks.

24.    There were daily walk through inspections of On Deck's kitchen by Chef Russell, Gary Gillihan, the Executive Steward, and Melissa Massua, Encore's Director of Health and Food Safety, to inspect operations and ensure food quality, cleanliness and overall status

of the kitchen. Mr. Gillihan told Ms. Bullio that she had the smoothest operation in the casino with no drama.  Ms. Massua told Ms. Bullio that she was very happy with how the kitchen looked and performed.  Ms. Bullio was happy to receive this feedback because Ms. Massua often talked about the restaurants that were failing inspection.

25.   Ms. Bullio's first year went very smoothly. Ms. Bullio worked extremely hard to make On Deck successful.  She worked long days, working every holiday, and did not take a vacation day in her first year.  On Deck far exceeded the original revenue projections and daily covers (number of patrons dining) for the outlet, and Ms. Bullio received a bonus for 2019.

26.   In March 2020, the pandemic hit, shutting the casino down.  Ms. Bullio and her staff all worked remotely, working on activities related to the outlet. Ms. Bullio also attended regular managers meetings and collaborated with On Deck's General Manager on initiatives to make the restaurant more profitable.

27.   Encore re-opened in July 2020. On Deck was one of the few restaurants that re-opened. The only other female Executive Chef, Maria Mac, who was the Executive Pastry Chef, did not return after the pandemic. That left Ms. Bullio as the only female Executive Chef at Encore.

28.   When On Deck re-opened, Ms. Bullio sat with her line cooks and went over all of the COVID-19 policies, and they signed COVID protocol documents.

29.   In August 2020, upper management decided to add a breakfast/brunch menu to On Deck, extending On Deck's opening time and adding greatly to Ms. Bullio's responsibilities. Ms. Bullio and On Deck's General Manager Jody Nugent asked if they could get their full management team back.  They were meant to have 8 managers but were down to

only 6 managers. Upper management decided to keep them at 6 despite their longer hours, thus keeping them understaffed.

30.    On October 5, 2020, some of Ms. Bullio's line cooks had a party at one of their houses that she was not aware of.  One of the sous chefs (M.A.), who had been out with COVID-19, was invited and attended the party.  Soon 8 of the line cooks came down with COVID-19 and could not work. Chef Joe learned of the off-site party and told Ms. Bullio about it.  He told her she had to find out who from the kitchen had attended the party and send them for a COVID test. In this conversation Chef Joe and Ms. Bullio were talking about her sous chefs and she said none of them had the backbone to manage the staff. To that comment Chef Joe said, "Jackie, you're the boss bitch. Stick your foot in their ass."

31.    Because of the number of staff who tested positive for COVID, On Deck had to close for 2 days to await the test results.  During this time Chef Joe and others had to determine what the source of the COVID outbreak was. If the source was internal, the gaming commission would have shut On Deck down completely.  Because On Deck was not shut down by the gaming commission, Encore must have determined that the source of the COVID was external, not internal.

32.    Ms. Bullio had serious talks with the cooks about the party. She told them that though she could not tell them what to do on their own time, they had not shown good judgment. Ms. Bullio told them it was not wise to invite the sous chef who had COVID. She said we could all have lost our jobs and the entire casino could have been shut down. Ms. Bullio reminded them of the COVID protocols.

33.    On October 24, 2020, Encore posted a job for an Executive Chef for one of the restaurants, Red 8.  The job duties for the Executive Chef of Red 8 were the same as the

job duties that Ms. Bullio performed as Executive Chef of On Deck as described in her job description. The description of the Work Environment for Red 8 was identical to the description of the Work Environment set out in Ms. Bullio's job description. Yet the starting salary being offered was $100,000, which was $10,000 more than Ms. Bullio was making, and she had been employed with Encore for a year and a half.

34.    In October 2020, Ms. Bullio did not know what the Executive Chef hired for Red 8 was actually paid.  In October 2020, Ms. Bullio did not know what any of the other Executive Chefs were being paid.

35.    Ms. Bullio usually opened the restaurant at 9:00 a.m. (6 a.m. if they were serving brunch) to do the food ordering.  She would bring in her sous chefs around 12:00 or 2:00 p.m. depending on the day. Ms. Bullio usually left the restaurant around 6:00 or 7:00 p.m. Thus, when Ms. Bullio left, the sous chefs were the managers on duty for the rest of the evening and the ones responsible for closing the kitchen at night.

36.    On the morning of December 10, 2020, Chef Joe scheduled a meeting for Ms. Bullio and Chef Russell for 9:00 a.m.  Ms. Bullio was told that a review of security camera footage on December 1, 2020, showed 5 cooks eating in the kitchen.  Ms. Bullio was not shown the security camera footage but was told that two cooks were sharing a chicken sandwich, and another cook was eating on the line.  One cook was licking his fingers and not washing his hands. Another cook was walking around with no mask, eating a chicken wing.  Ms. Bullio knew that all of these cooks had culinary training against eating while working and had also passed a food state safety exam that Encore requires all of its employees to take, and in addition had signed COVID protocol documents that she had gone over with them requiring wearing masks, washing hands, and not sharing food.

9

37.    Ms. Bullio told Chef Joe that this must have happened during her off hours, as no one ever behaved like this when she was present.  Chef Joe asked, "Oh, you weren't there?" indicating to Ms. Bullio that he had thought she was the manager on duty. Ms. Bullio reiterated that she was not there when this happened, and that she does not allow this to happen in her kitchen, and that they did not behave this way when she was around.  Ms. Bullio said she doesn't have a crystal ball into the restaurant when she is not there. Nevertheless, Chef Joe said he had to place Ms. Bullio on a SPI (suspended pending investigation).  He asked Ms. Bullio if she knew what the three outcomes could be for an SPI. Ms. Bullio said yes, she would either be brought back with discipline, or without discipline, or she could be terminated. During the meeting Chef Russell appeared to Ms. Bullio to be very uncomfortable.

38.    An SPI is the third level of discipline. The first two levels are a First Written Warning and a Second Written Warning.  For some reason, management skipped the first two levels of discipline and gave Ms. Bullio the third level – the SPI – even though she had never had any discipline prior to this and was not the manager on duty when the cooks violated Encore's policies.

39.    Chef Joe took Ms. Bullio's badge and told her to write up a statement.  She wrote up a statement responding to the SPI, which she thought was very prejudicial. She noted in her statement that she was not present when this behavior occurred, and that she does not tolerate this behavior by her staff.

40.    The five cooks and Ms. Bullio were placed on SPI. The managers on duty at the time that the conduct occurred were the two male sous chefs, Kunal Datta and Ferruccio Giacomella. Mr. Datta and Mr. Giacomella were not disciplined even though they were

the managers on duty at the time. Rather, Mr. Datta and Mr. Giacomella were merely issued Manager Memos by Chef Russell.

41.    Ms. Bullio was brought back to work on December 21, after a 10-day suspension, and met with Chef Joe and Kelly Stevenson-Idham, Director of Human Resources, for a resolution meeting.  Ms. Bullio asked if there were any managers seen in the camera footage.  Ms. Stevenson-Idham admitted there were none. Nevertheless, she said Ms. Bullio was accountable for her staff.  Ms. Bullio said that she did not have a crystal ball to see into the restaurant when she was not there.  Chef Joe got angry, pointed his finger at Ms. Bullio and yelled, "This time this one is on you.  I am so sick and tired of hearing that. If I hear that again I'm going to go crazy." Even though Encore knew that Ms. Bullio was not the manager on duty and that Mr. Datta and Mr. Giacomella, her 2 sous chefs, were the managers on duty, Ms. Bullio was given a last and final warning. Meaning that if anything else happened, she would be terminated.  Ms. Bullio asked Chef Joe why she was given a last and final warning when she was not the one who violated policy, it was her subordinates who had violated policy, and her sous chefs were in charge at the time. Chef Joe told her that Encore held her accountable for her subordinates' conduct.

42.    Having an SPI on her record meant that Ms. Bullio would not earn her bonus for 2020, despite the fact that On Deck had once again exceeded its revenue projections and had a great year.

43.    Sometime after this Ms. Bullio asked Chef Russell if he ever had an Executive Chef do an irresponsible act. He told Ms. Bullio yes. She asked whether he had gotten suspended for his chef's irresponsible act. He said no. Ms. Bullio told him that she did not see the

11

equity in this, where she got suspended for her subordinates' violation of policy when she was not present and had not violated the policy herself.

44.     On December 30, 2020, On Deck was the first restaurant at Encore to receive all A grades for inspection of its Prep/Pantry/Walk in, its Hotline, its Dish room, its Beverage Station and its Bar.

45.     On Deck exceeded its revenue targets for both 2019 and 2020.  The Food & Beverage Profit & Loss statement as of February 7, 2021 shows that in the prior month the revenues for On Deck exceeded the revenues for Rare Steakhouse, Red 8 Restaurant, and the Concessions.

46.     On January 15, 2021, during a managers' meeting with all the chefs and general managers of the restaurants present, Chef Joe said that the CEO of Encore was very pleased with Encore's 4th quarter. The casino had made $4.3 million when they had hoped just to break even.  He said that the CEO was so pleased he was going to open his wallet and share it with some of them. Chef Joe said he would meet with some of the chefs and general managers on an individual basis to discuss this.  Despite her hard work and the success of her restaurant On Deck, Ms. Bullio did not receive this bonus.

47.     On Monday, January 25, 2021, Ms. Bullio received an email from Melissa Massua, the Food and Safety Director, telling her that she had done an inspection of On Deck on Saturday, January 23, 2021.  The inspection was done at 11:00 a.m., and Ms. Bullio was not in the restaurant that day until 1:00 p.m. It is highly unusual for Ms. Massua to do an inspection on a Saturday and at a time that Ms. Bullio was not present to be able to answer questions. She usually did inspections Monday through Friday. Inspections, unlike daily walk-throughs, are intense, time-consuming events in which all aspects of

the restaurant are checked for health and safety violations.  The food prep area is the most

difficult with so many labels and time stamps.  Each item that is deficient receives 3-4

points. If you get 40 points in any one area, you are written up for poor performance.

Fortunately, On Deck passed the inspection. But had it not, and with Ms. Bullio on a last

and final warning, this could have led to her termination. This inspection could not have

been scheduled without Chef Joe's knowledge.  Ms. Bullio felt like she had been set up,

and this felt very threatening to her.

48.     On February 11, 2021, Ms. Bullio was called into a meeting with Chef Russell, Kelly

Stevenson-Idham, the Director of Human Resources, and Danielle Hailey, HR Counselor.

Ms. Stevenson-Idham told Ms. Bullio that a line cook, Nelson Torres, had complained

about how she was speaking to him, claiming that Ms. Bullio swore at him. Ms. Bullio

told them that she never swore at Mr. Torres. She asked Ms. Stevenson-Idham if Mr.

Torres referred to any specific dates, times or specifics of the event since she was the one

who received his complaint. She said he did not. Ms. Stevenson-Idham also said a front

of the house manager claimed that Ms. Bullio was short with him. Ms. Bullio told Ms.

Stevenson-Idham that Mr. Torres, who had been suspended, had been a big problem for

On Deck. Ms. Stevenson-Idham said that people claimed the work environment was

tense.  Ms. Bullio told her that On Deck was the busiest operation, running all day, 7 days

a week, and the restaurant was short-staffed.

49.     Ms. Bullio could not believe she was being disciplined, which could very likely lead to

termination, for supposedly swearing and using an abrupt tone towards an employee

given how her boss, Chef Joe, treated her and his other subordinates, swearing constantly,

being rude, being pleased that people were afraid of him (including Mr. Torres), and

telling Ms. Bullio that she was supposed to be the "boss bitch."  Ms. Bullio knew her

fellow Executive Chefs swore regularly.  Ms. Bullio did not believe she was rude to her

staff. Sometimes she may have been short, but that was because the restaurant was

extremely busy and sometimes, she had to communicate information quickly to get the

work done.

50.     Ms. Bullio was told to write up a statement while Chef Russell, Ms. Stevenson-Idham

and Ms. Hailey stepped out of the room.  Ms. Bullio wrote:

> After entering work on February 11th, there was about a 1 hr meeting that
> took place where Kelly spoke about some concerns that she had about
> employees coming to her in regards to myself having an abrupt tone.
>
> On Deck is an extremely busy restaurant, with several menus and extended
> working hours. We talked about a few occurrences with cooks feeling that I
> am abrupt in my tone and short with them.
>
> We are short staffed, and I need to get to the point quickly and move on with
> any additional tasks at hand that need to get done. I have had in the past
> several cooks that are more than willing to talk with me about a personal
> matter or any frustrations that they are having in the kitchen.
>
> Again, I am direct and to the point and need to continue with getting the job
> done.

51.     Once Ms. Bullio finished her statement, everyone re-entered the room and she was given

an SPI document. This document had no written allegations on it. Where it did not even

say why she was being suspended, she refused to sign it. She was then suspended,

pending investigation.

52.     On February 15, 2021, Chef Russell texted Ms. Bullio to schedule a resolution meeting

for the following day.  On February 16, 2021, Ms. Bullio met with Chef Russell and Ms.

Stevenson-Idham (who joined virtually). The meeting was very quick. Ms. Stevenson-

Idham told Ms. Bullio they were moving forward with separation. Ms. Bullio asked what

investigation had been conducted. Ms. Stevenson-Idham said they did not have to give her any details about the investigation, but that this was based on the meeting they had on February 11. One of the termination forms states that Ms. Bullio was terminated for "discourteous behavior."

53.   When Ms. Bullio went to fill a prescription later that week, she learned that Encore had cut off her health insurance on February 15. Also, she was never paid her final paycheck or her accrued, unused vacation.

54.   A month later, on March 16, 2021, still having not received her final paycheck or vacation pay, Ms. Bullio filed a wage complaint with the Attorney General's office. On March 22, 2021, she filed a complaint in Small Claims Court for unpaid wages to be paid her final paycheck and vacation pay.[2]

55.   Ms. Bullio filed her claims for sex discrimination at the MCAD on August 9, 2021. At the time, she did not know what any of the other Executive Chefs at Encore were being paid. She only knew that the Executive Chef at Red 8 might have been earning $100,000 based on the job posting that she had seen.

56.   In its Position Statement filed on October 21, 2021, Encore explained that 2 Executive Chefs for Red 8 and Rare Steakhouse were paid more than $100,000 because they were required to have specialized skills to prepare unique Asian dishes (Red 8) and for a high-end steakhouse (Rare Steakhouse). Encore did not state what the 2 Executive Chefs for Red 8 and Rare Steakhouse were actually paid, so Ms. Bullio still did not know what these two Executive Chefs were paid. In the Position Statement, Encore claimed that Ms.

---

[2] Ms. Bullio and Encore resolved the unpaid wages claim in September 2022.

Bullio had a lower salary because she did not need to have specialized skills for On Deck, which was a fast-casual restaurant.

57.   Since Ms. Bullio also did not know what the Executive Chefs at any of the other 7 casual outlets like On Deck were paid, Ms. Bullio requested in the Rebuttal she filed at the MCAD that the MCAD request salary information from Encore for the 7 Executive Chefs so that Ms. Bullio could determine whether she was underpaid compared to Executive Chefs at the other casual outlets.

58.   Almost 2 years later, on August 10, 2023, in response to a request from the MCAD, Encore submitted to the MCAD, copying Ms. Bullio, a document setting forth the salaries of all of the Executive Chefs at Encore and identifying their genders. For the first time, Ms. Bullio learned that there were 15 male Executive Chefs who were paid more than she was.  The salaries for these 15 male Executive Chefs ranged from $95,000 to $140,000. According to this document, Ms. Bullio and the one other female Executive Chef were two of the lowest paid Executive Chefs earning $90,000 (Ms. Bullio) and $92,250.

### COUNT I

**Sex Discrimination Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and Mass. Gen. L. c. 151B Based on Termination**

59.   Ms. Bullio repeats and realleges paragraphs 1 through 58 as though fully set forth herein.

60.   At the time she was terminated, Ms. Bullio was performing her job at an acceptable level. On Deck was one of the busiest restaurants at Encore and was very successful. On December 30, 2020, just weeks before Ms. Bullio was terminated, On Deck was the first restaurant at Encore to receive all A grades for inspection of its Prep/Pantry/Walk in, its Hotline, its Dish room, its Beverage Station and its Bar.  On Deck exceeded its revenue

targets for both 2019 and 2020.  The Food & Beverage Profit & Loss statement as of February 7, 2021 shows that in the month prior to Ms. Bullio's termination the revenues for On Deck exceeded the revenues for Rare Steakhouse, Red 8 Restaurant, and the Concessions.

61.    Ms. Bullio was terminated on February 16, 2021.

62.    Ms. Bullio was 1 of only 2 female Executive Chefs, and after the COVID shutdown was the only female Executive Chef at Encore. Ms. Bullio experienced sexist comments made by her supervisor and was treated differently from her male colleagues.  Some examples of the different treatment she experienced include that she was terminated for "discourteous behavior" that was acceptable behavior for male Executive Chefs. Also, she was terminated for behavior for which several male Executive Chefs received a lower level of discipline but were not terminated.  In addition, she was disciplined for conduct of her subordinates when she was not present, whereas the two male sous chefs who were on duty at the time were not disciplined.

63.    At the suspension meeting on February 11, 2021, Ms. Bullio was told that there was a complaint that she had sworn at one of her cooks, which she denied, and complaints that she used an abrupt tone, which she explained was sometimes required to get things done in a very busy, understaffed kitchen.  On February 16, 2021, when Ms. Bullio asked what investigation had been conducted, Ms. Stevenson-Idham said they did not have to give her any details about the investigation, but that this was based on the meeting they had on February 11.

64.    By these actions and by terminating Ms. Bullio based on these circumstances, Defendants have engaged in unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Mass. Gen. L. c. 151B § 4(1).

65.    As a direct and proximate result of the above-described conduct, Ms. Bullio has sustained substantial injury, including but not limited to, loss of compensation, emotional distress, damage to her reputation, other compensatory damages, attorneys' fees and costs.

       **WHEREFORE**, Ms. Bullio prays this Court enter a judgment on Count I above against the Defendants Wynn MA, LLC d/b/a Encore Boston Harbor and Wynn Resorts, Limited and award her compensatory damages (including lost wages and benefits, damages for emotional distress and harm to her reputation, and other compensatory damages), reasonable attorneys' fees, costs and interest, punitive damages, and such other relief as the Court deems just and proper.

## COUNT II

### Sex Discrimination Under Title VII of the Civil Rights Act of 1964 and Mass. Gen. L. c. 151B for Wage Discrimination

66.    Ms. Bullio repeats and realleges paragraphs 1 through 65 as though fully set forth herein.

67.    As Executive Chef of On Deck, Ms. Bullio performed work that was equal (meaning work of substantial equality) to, and/or was comparable to, the Executive Chefs of the other restaurant outlets at Encore, including but not limited to the Buffet, Catering and Banquets, Garden Café, Oyster Bar and Waterfront, Rare Steakhouse, Red 8, and Sinatra.

68.    The job responsibilities for the Executive Chefs of the different Encore restaurant outlets were the same or comparable as reflected in Ms. Bullio's job description and a job posting that Ms. Bullio has seen for another outlet which list almost identical job

responsibilities. The description of the "Work Environment" is identical in her job description and the job posting Ms. Bullio has seen for another outlet. This shows that the jobs of the Executive Chefs were substantially related and substantially equal, or comparable, in skill, effort, responsibility and working conditions.

69.  Based on Ms. Bullio's experience as Chef Tournant trailing other Executive Chefs, filling in at different outlets and assisting other Executive Chefs, as well as her experience as Executive Chef at On Deck and interacting with other Executive Chefs and participating in chef meetings and management meetings, she observed that the job responsibilities and working conditions at On Deck were substantially the same as the job responsibilities and working conditions at other outlets.

70.  Ms. Bullio believes that she had a higher level of culinary education, and that her experience was substantially similar to the other male Executive Chefs.

71.  On Deck was one of the most successful outlets at Encore. For 2019 and 2020, On Deck exceeded its revenue targets. On Deck was the first restaurant at Encore to receive all A grades for inspection of its Prep/Pantry/Walk in, its Hotline, its Dish room, its Beverage Station, and its Bar.

72.  On August 10, 2023, Ms. Bullio received a copy of a document that Encore submitted to the MCAD in which she learned for the first time that there were 15 male Executive Chefs who were paid more than she was and what their salaries were.  The salaries for these 15 male Executive Chefs ranged from $95,000 to $140,000.

73.  According to this document, Ms. Bullio and the only other female Executive Chef were two of the lowest paid Executive Chefs earning $90,000 (Ms. Bullio) and $92,250.

74.    Encore discriminated against Ms. Bullio because of her sex by not paying her equally to what it paid other male Executive Chefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Mass. Gen. L. c. 151B § 4(1).

75.    As a direct and proximate result of the above-described conduct, Ms. Bullio has sustained substantial injury, including but not limited to, loss of compensation, emotional distress, attorneys' fees, and costs.

      **WHEREFORE**, Ms. Bullio prays this Court enter a judgment on Count II above against the Defendants Wynn MA, LLC d/b/a Encore Boston Harbor and Wynn Resorts, Limited and award her compensatory damages (including lost wages and benefits, and damages for emotional distress), reasonable attorneys' fees, costs and interest, punitive damages, and such other relief as the Court deems just and proper.

<u>**COUNT III**</u>

**Violation of federal Equal Pay Act, 29 U.S.C. § 206(d)**

76.    Ms. Bullio repeats and realleges paragraphs 1 through 75 above of the Complaint as though fully set forth herein.

77.    Ms. Bullio is a covered female employee under the federal Equal Pay Act (the EPA), 29 U.S.C. § 206(d).

78.    Defendants are covered employers under the EPA.

79.    Under the EPA, Defendants have the obligation to pay Ms. Bullio equal pay for performing work that is equal (meaning work of substantial equality) to work performed by one or more male employees.

80.    As Executive Chef of On Deck, Ms. Bullio performed work that was equal (meaning work of substantial equality) to the Executive Chefs of the other restaurant outlets at

Encore, including but not limited to the Buffet, Catering and Banquets, Garden Café, Oyster Bar and Waterfront, Rare Steakhouse, Red 8, and Sinatra.

81. The job responsibilities for the Executive Chefs of the different Encore outlets were the same or substantially similar as reflected in Ms. Bullio's job description and a job posting that Ms. Bullio has seen for another outlet which list almost identical job responsibilities. The description of the "Work Environment" is identical in her job description and the job posting Ms. Bullio has seen for another outlet. This shows that the jobs of the Executive Chefs were substantially related and substantially equal in skill, effort, responsibility and working conditions.

82. Based on Ms. Bullio's experience as Chef Tournant trailing other Executive Chefs, filling in at different outlets and assisting other Executive Chefs, as well as her experience as Executive Chef at On Deck and interacting with other Executive Chefs and participating in chef meetings and management meetings, she observed that the job responsibilities and working conditions at On Deck were substantially the same as the job responsibilities and working conditions at other outlets.

83. Ms. Bullio believes that she had a higher level of culinary education, and that her experience was substantially similar to other male Executive Chefs.

84. On Deck was one of the most successful outlets at Encore. For 2019 and 2020, On Deck exceeded its revenue targets. On Deck was the first restaurant at Encore to receive all A grades for inspection of its Prep/Pantry/Walk in, its Hotline, its Dish room, its Beverage Station, and its Bar.

85. On August 10, 2023, Ms. Bullio received a copy of a document that Encore submitted to the MCAD in which she learned for the first time that there were 15 male Executive

Chefs who were paid more than she was and what their salaries were.  The salaries for these 15 male Executive Chefs ranged from $95,000 to $140,000.

86.     According to this document, Ms. Bullio and the only other female Executive Chef were two of the lowest paid Executive Chefs earning $90,000 (Ms. Bullio) and $92,250.

87.     Defendant was aware of its obligation to pay employees equally for performing equal work.

88.     By failing to pay Ms. Bullio equal wages to wages Defendants paid to male Executive Chefs who performed equal work, Defendants violated the Equal Pay Act, 29 U.S.C. § 206(d).

89.     As a direct and proximate result of the above-described conduct, Ms. Bullio has sustained substantial injury, including but not limited to, loss of compensation, attorneys' fees, and costs.

**WHEREFORE,** Ms. Bullio prays this Court enter a judgment on Count III above against the Defendants Wynn MA, LLC d/b/a Encore Boston Harbor and Wynn Resorts, Limited and award her unpaid wages and award an additional equivalent amount in liquidated damages, and reasonable attorneys' fees, costs and interest, and such other relief as the Court deems just and proper.

## <u>COUNT IV</u>

### Violation of Massachusetts Equal Pay Act, Mass. Gen. L. c. 149, § 105A

90.     Ms. Bullio repeats and realleges paragraphs 1 through 89 above of the Complaint as though fully set forth herein.

91.     Ms. Bullio is a covered female employee under the Massachusetts Equal Pay Act (MEPA), Mass. Gen. L. c. 149, §105A.

22

92.     Defendants are covered employers under MEPA as Wynn MA, LLC d/b/a Encore Boston
        Harbor operates a casino in Everett, Massachusetts, and Wynn Resorts Limited is a
        parent company of Encore and therefore is doing business in Massachusetts.

93.     Under MEPA, Defendants have the obligation to pay Ms. Bullio equal pay for
        performing work that is comparable to work performed by one or more male employees.

94.     As Executive Chef of On Deck, Ms. Bullio performed work that was comparable to the
        Executive Chefs of the other restaurant outlets at Encore, including but not limited to the
        Buffet, Catering and Banquets, Garden Café, Oyster Bar and Waterfront, Rare
        Steakhouse, Red 8, and Sinatra.

95.     The job responsibilities for the Executive Chefs of the different Encore outlets were the
        same or comparable as reflected in Ms. Bullio's job description and a job posting that
        Ms. Bullio has seen for another outlet which list almost identical job responsibilities. The
        description of the "Work Environment" is identical in her job description and the job
        posting Ms. Bullio has seen for another outlet. This shows that the jobs of the Executive
        Chefs were comparable in skill, effort, responsibility and working conditions.

96.     Based on Ms. Bullio's experience as Chef Tournant trailing other Executive Chefs, filling
        in at different outlets and assisting other Executive Chefs, as well as her experience as
        Executive Chef at On Deck and interacting with other Executive Chefs and participating
        in chef meetings and management meetings, she observed that the job responsibilities and
        working conditions at On Deck were substantially the same as the job responsibilities and
        working conditions at other outlets.

97.     Ms. Bullio believes that she had a higher level of culinary education, and that her
        experience was substantially similar to other male Executive Chefs.

98.     On Deck was one of the most successful outlets at Encore. For 2019 and 2020, On Deck exceeded its revenue targets. On Deck was the first restaurant at Encore to receive all A grades for inspection of its Prep/Pantry/Walk in, its Hotline, its Dish room, its Beverage Station, and its Bar.

99.     On August 10, 2023, Ms. Bullio received a copy of a document that Encore submitted to the MCAD in which she learned for the first time that there were 15 male Executive Chefs who were paid more than she was and what their salaries were.  The salaries for these 15 male Executive Chefs ranged from $95,000 to $140,000.

100.    According to this document, Ms. Bullio and the only other female Executive Chef were two of the lowest paid Executive Chefs earning $90,000 (Ms. Bullio) and $92,250.

101.    Defendant was aware of its obligation to pay employees equally for performing comparable work.

102.    By failing to pay Ms. Bullio equal wages to wages Defendants paid to male Executive Chefs who performed comparable work, Defendants violated the Massachusetts Equal Pay Act, Mass. Gen. L. c. 149, § 105A.

103.    As a direct and proximate result of the above-described conduct, Ms. Bullio has sustained substantial injury, including but not limited to, loss of compensation, attorneys' fees, and costs.

**WHEREFORE,** Ms. Bullio prays this Court enter a judgment on Count IV above against the Defendants Wynn MA, LLC d/b/a Encore Boston Harbor and Wynn Resorts, Limited and award her unpaid wages and award an additional equivalent amount in liquidated damages, and reasonable attorneys' fees, costs and interest, and such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all counts so triable.

Respectfully Submitted,

By Her Attorneys

*/s/ Justine H. Brousseau*
Justine H. Brousseau   BBO# 553776
Nina Joan Kimball     BBO# 547567
Kimball Brousseau LLP
P.O. Box 900
Plymouth, MA  02362
(617) 367-9449
jbrousseau@kbattorneys.com
nkimball@kbattorneys.com

DATED: February 16, 2024